IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DA' QUAN T. HARRY | : | |
| Plaintiff, | : | CIVIL NO. 2:16-cv-341 |
| v. | : | JUDGE ALGENON L. MARBLEY |
| COMMISSIONER OF SOCIAL SECURITY, | : | Magistrate Judge Jolson |
| Defendant. | : | |

**OPINION & ORDER**

This matter comes before the Court for consideration of Plaintiff Da'Quan T. Harry's ("Harry") Objection to Magistrate Judge Jolson's April 24, 2017 **Report and Recommendation** (Doc 13), which recommends that this Court overrule Harry's Statement of Errors and affirm the final decision of the Commissioner of Social Security to deny Harry's application for supplemental security income. Upon independent review by this Court, and for the reasons set forth below, Harry's objection is hereby **OVERRULED**. The Court **ACCEPTS** and **AFFIRMS** the Magistrate Judge's **Report and Recommendation**.

I. BACKGROUND

When Da'Quan T. Harry was 16 years old, his mother, Deidra Harry ("Deidra"), applied for Disability Insurance Benefits ("DIB") on his behalf. She alleged that her son has been disabled since December 15, 2007. Harry's original claim was denied. On March 20, 2014, the Administrative Law Judge (ALJ) held a video hearing to evaluate further Harry's claim. Harry and Deidra testified during the hearing, and the ALJ addressed interrogatories he proposed to a

1

Vocational Expert ("VE").[1]  Because Harry turned eighteen years-old prior to the hearing, the ALJ obtained additional school and medical records to evaluate Harry's application under the adult disability standards and the child disability standards.  Regarding Harry's medical records, the ALJ considered reports from four consultative evaluations Harry attended as a child, and one consultative evaluation he attended when he was 18 years old.[2]  On November 11, 2014, the ALJ held that Harry was not disabled at any time within the meaning of the Social Security Act.

When evaluating a child under the child disability standards, the ALJ must conduct a three-step analysis to determine if the child is disabled and entitled to benefits.  First, if the child is engaged in substantial, gainful activity, the child is not disabled.  Second, if the child does not have a severe medically determinable impairment or a combination of impairments, the child is not disabled.  Finally, if the child's impairment does not meet, medically equal, or functionally equal the listings, the child is not disabled.  20 § C.F.R. 416.924.

At steps one and two, the ALJ analyzed four medical evaluations Harry attended as a child and one medical evaluation he attended as an adult.[3]  Dr. Jack Kramer diagnosed Harry with attention deficit hyperactive disorder ("ADHD"), Dr. Mark Hammerly concluded that Harry showed symptoms of ADHD, and Dr. Johanna Tylka concluded that Harry had probable ADHD.

---

[1] The ALJ proposed a hypothetical question involving an individual who was born in November 1995, has limited education, can communicate English, has no work experience and has a residual functional capacity to perform full range of work at all exertional levels but with some non-exertional limitations.  The individual is not required to read instructions, write reports or perform math calculations as essential functions of the job.  The individual can have superficial interaction with co-workers, supervisors, and the public.  Based on those characteristics, the VE was to determine whether the individual could work in the national economy.

[2] Consultative evaluations are medical examinations that Social Security Disability claimants undergo to provide Social Security with a report of the claimant's conditions and various limitations.  The doctors performing the evaluations are independent physicians.

[3] Dr. Mark Hammerly evaluated Harry on May 13, 2008, when he was 12 years old, and Dr. Scott Donaldson evaluated Harry in July 2008.  Dr. Jack Kramer evaluated Harry in March 2011, when he was 15 years old, and Dr. Albert Virgil evaluated Harry on February 2, 2012 when he was 16 years old.

Drs. Donaldson, Tylka and Virgil diagnosed Harry with a learning disorder and a depressive disorder, and all four doctors expressed concern about Harry's behavioral patterns. Based on the results of Harry's medical evaluations, the ALJ found that Harry had not engaged in any substantial gainful activity, and that he had severe impairments of ADHD, oppositional defiant disorder, learning disorder and a depressive disorder.

At step three, an impairment functionally equals a listing if it results in marked limitations in two domains of functioning or an "extreme" limitation in one domain of functioning. 20 CFR § 416.924(a). An impairment results in a marked limitation if it seriously interferes with the person's ability to independently initiate, sustain, or complete activities. *Id*. The ALJ found that Harry had impairments that caused a marked limitation in his ability to interact and relate with others, but he did not have marked limitations in the other domains of functioning. The ALJ concluded that Harry's impairment did not result in a marked limitation in two domains of functioning or an extreme limitation in one domain; therefore, it did not functionally equal a listing. [4] Because Harry did not have an impairment or combination of impairments that either meets, medically equals, or functionally equals a listed impairment, the ALJ concluded that he is not disabled.

The ALJ then evaluated Harry under the adult disability standards, which requires the ALJ to conduct a five-step analysis to determine whether a claimant is disabled and entitled to benefits. At step one, the ALJ found that since Harry turned 18 years old, he had not engaged in substantial gainful activity. At steps two through five, the ALJ analyzed Harry's medical evaluations, and the VE's interrogatories. The doctors who conducted Harry's medical evaluations determined that Harry has severe depressive disorder, ADHD, oppositional defiant

---

[4] An impairment functionally equals a listing if it results in marked limitations in two domains of functioning or an "extreme" limitation in one domain. 20 CFR § 416.924(a).

disorder, and a depressive disorder. Despite those diagnoses, Harry has the residual functioning capacity ("RFC") to perform basic work activities. The VE concluded that Harry could perform unskilled jobs such as a janitor, dishwasher or packager—each with 190,000-200,000 present jobs in the national economy. Based on Harry's medical evaluations and the VE's conclusion, the ALJ determined that Harry has severe medical impairments, but he could perform jobs that existed in significant numbers in the national economy; therefore, he is not disabled under the Social Security Act at any time after he turned 18 years old.

## II. STANDARD OF REVIEW

Upon objection to a magistrate judge's report and recommendation, this Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C § 636(b)(1)(C). Under the Social Security Act, the ALJ determines whether someone is disabled by weighing evidence and resolving disputes, based on the record as a whole. *Kalmbach v. Comm'r of Soc. Sec.,* 409 F. App'x 852, 859 (6th Cir. 2011). The ALJ's determination shall be viewed as conclusive, if it is supported by substantial evidence. *Id.* The Court's de novo review is limited to determining whether substantial evidence supports the ALJ's findings and whether the ALJ applied the correct legal standards. *Id.* Substantial evidence is "more than a scintilla, it is evidence a reasonable mind might accept as adequate to support a conclusion." *Id* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1984)).

## III. ANALYSIS

Harry objects to the magistrate judge's report and recommendation on three grounds: (1) the ALJ did not properly evaluate whether Harry's impairments functionally equaled the listings;

(2) the ALJ did not properly evaluate whether Harry satisfied the requirements of Listing 112.05;

(3) the ALJ did not properly evaluate whether Harry satisfied the requirements of Listing 12.05.

### A. The ALJ Properly Evaluated Whether Harry's Impairments Functionally Equaled the Listings

Harry objects to the Magistrate Judge's Recommendation that the ALJ properly evaluated whether Harry's impairments functionally equaled the listings. Harry asserts that the ALJ properly concluded that he has a marked limitation in one functioning domain, but the ALJ provided a "terse and conclusory analysis regarding the remaining five functional domains." Reviewing the record in its entirety, this Court disagrees with Harry and finds substantial evidence in the record to support the ALJ's analysis regarding all six functional domains.

When determining whether a child is disabled and entitled to Social Security benefits, the ALJ must conduct the following three-step analysis:

1. If the child is engaging in substantial gainful activity, the child is not disabled. If the child is not engaging in substantial gainful activity, the ALJ will consider any physical or mental impairments to see if the child has an impairment or a combination of impairments that is severe;

2. If the child's impairments are not severe, the child is not disabled. If the impairments are severe, the child's claim will be reviewed to see if the child has any impairments that meets, medically equals or functionally equals the listings;

3. If the child has impairments that meets, medially equals or functionally equals the listings, the child is disabled. If the impairments do not meet, medically equal or functionally equal the listings, the child is not disabled. An impairment functionally equals a listing if it results in marked limitations in two domains of functioning or an extreme limitation in one domain of functioning.

20 C.F.R. § 416.924a(a).

Harry's objection focuses primarily on step three of the analysis, whether his impairments functionally equaled the listings, but the Court will briefly address steps one and two. The record shows that the ALJ evaluated Harry pursuant to the required three-step analysis.

5

The ALJ relied on Harry's testimony at his administrative hearing, his educational reports and his medical evaluations. At step one, the ALJ determined that Harry was not engaged in any substantial gainful activity.[5] Relying on Harry's medical evaluations at step two, the ALJ determined that Harry had severe impairments of ADHD, oppositional defiant disorder, learning disorder, and depressive disorder.

At step three, the ALJ must determine whether an impairment meets, medically equals, or functionally equals the listings. An impairment functionally equals a listing if it results in marked limitations in two domains of functioning or an extreme limitation in one domain of functioning. 20 C.F.R. § 416.924a(a).[6] A limitation is marked if it interferes seriously with a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). A limitation is extreme if it interferes very seriously with a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3).

Harry argues that at step three, the ALJ did not discuss evidence relevant to his claim, such as his IQ score, his poor academic performance, his medical evaluation with Dr. Albert Virgil and his reports from his Individualized Education Program ("IEP") teacher. The record, however, shows that the ALJ did consider the evidence mentioned above when making his determination.

---

[5] Substantial activity is any work that involves doing significant physical or mental activities. 20 C.F.R. § 416.972(a). Gainful activity is any work conducted for pay or profit. 20 C.F.R. § 416.972(b). School activities, household chores and social program are not considered gainful activity. 20 C.F.R. § 416.972(c).

[6] The six domains of functioning are as follows:
    1) acquiring and using information;
    2) attending and completing tasks;
    3) interacting and relating with others;
    4) moving and manipulating objects;
    5) caring for yourself;
    6) health and physical well-being.
20 C.F.R. § 416.926A(b)(1)

When evaluating whether Harry's impairments functionally equaled the listings, the record shows that the ALJ relied on Harry and Deidra's testimony at his administrative hearing, a questionnaire from his IEP teacher concerning his six functional domains, and Harry's medical evaluation from Dr. Virgil, which stated that Harry has an impaired ability to acquire and use information. Harry testified that he sometimes had problems focusing in school, and Deidra testified that Harry would do his homework, but not turn it in. The ALJ also had evidence to support the fact that Harry's ability to acquire and use information was improving—counseling notes that showed Harry was back on his ADHD medication, his grades were improving and he was passing all but one class. The ALJ determined that Harry's impairments did not meet or medically equal a listed impairment; however, he found that Harry's impairments functionally equaled a listed impairment. The ALJ determined that Harry has a marked limitation in his ability to interact with and relate to others (domain 3), and a less than marked limitation in his ability to acquire and use information (domain 1), but he did not find any marked limitations in the other five domains. The ALJ determined that Harry had a less than marked limitation in domain 1 because of his improvement in that area.

Further, the ALJ relied on uncontradicted opinions from State agency physicians, psychologists, and experts in Social Security disability evaluation, Drs. Marlow and Zwissler. The psychologists concluded that Harry's ability to acquire and use information improved after he began taking his medication, a finding that was consistent with the evidence on the record. The ALJ gave "great weight" to the psychologists' opinions because he is bound to do so by the "treating physician rule." *Kalmbach*, 409 F. App'x at 860. The rule generally requires the ALJ to give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians. *Id.*

Aside from the treating physician rule, the ALJ is not required to explain "every consideration that went into the three-step analysis. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). However, the ALJ did go into detail explaining the evidence he used to determine whether Harry's impairment functionally equaled a listing, and how he weighed the evidence. There is substantial evidence on the record that supports the ALJ's findings that Harry's impairment does not functionally equal a listing. The ALJ's decision "should not be disturbed" unless the Court is persuaded that his findings are insufficient. *Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir.1986). That is not the case here. Therefore, the Court finds that the ALJ did not err in finding that Harry's impairment does not functionally equal a listed impairment.

### B. The ALJ Properly Evaluated Whether Harry Satisfied the Requirements of Listing 112.05

Harry also argues that the ALJ erred by finding that he did not meet the requirements of Listing 112.05. According to Harry, his IQ score of 59, satisfied paragraph C, and D of the listing. Reviewing the record in its entirety, this Court disagrees with Harry and finds substantial evidence in the record to support the ALJ's finding that Harry did not satisfy the requirements of Listing 112.05.

Listing 112.05 of Part 404 Subpart P discusses intellectual disability. Intellectual disability is "categorized by significantly sub-average general intellectual functioning with deficits in adaptive functioning." 20 C.F.R. Part 404, Subpt. P, Appendix 1, Listing § 112.05. A person is intellectually disabled when one of the requirements listed under sections A, B, C, D, E, or F is satisfied. *Id.* The requirements for section C and D are as follows: section C—a valid verbal, performance, or full scale IQ of 59 or less; section D— (1) a valid verbal, performance,

or full scale IQ of 60 through 70 and (2) a physical or other mental impairment imposing an additional and significant limitation of function.[7] *Id.*

When determining if a child is intellectually disabled, the ALJ must rely on medical evidence. 20 C.F.R. Part 404, Subpt. P, Appendix 1, Listing § 112.05B. The medical evidence can consist of symptoms, signs, or laboratory findings, including psychological or developmental test findings. *Id.* If available, a medical source should "reflect the medical source's consideration of information from parents or other concerned individuals who are aware of the child's activities of daily living, social functioning, and ability to adapt to different settings and expectations." *Id.* "As necessary, information from nonmedical sources, such as parents, should also be used to supplement the record of the child's functioning to establish the consistency of the medical evidence and longitudinally of impairment severity." *Id.* The ALJ also utilizes standardized testing to evaluate the child. 20 C.F.R. Part 404, Subpt. P, Appendix 1, Listing § 112.05C. Together, medical evidence and standardized tests allow the ALJ to document the required level of severity.

Harry argues that since he has an IQ of 59, he satisfied the requirements described in section C: a valid verbal, performance, or full scale IQ score of 59 or less; or D: a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function. 20 C.F.R Part 404, Subpt. P, Appendix 1, Listing § 112.05. While it is true that Harry scored a 59 on an IQ test in 2008, several other scores are part of the record.

Four years later, he was administered the Woodcock-Johnson Tests of Cognitive Ability-Third Edition ("WJ-III COG"). His scores were: (1) General Ability: 80, (2) Verbal Ability: 80,

---

[7] Harry's argument is based on Section C and D, therefore, the Court will not address the other four sections.

(3) Thinking Ability: 85, (4) Cognitive Efficiency: 84, (5) Phonemic Awareness: 94, and (6) Working Memory: 93. Moreover, Harry has previously scored an average of 72 and 84 on the WJ-III COG. Scores between 90 and 110 are considered average. The ALJ considered Harry's scores on each test when he determined that Harry did not meet the requirements of Listing 112.05.

Harry's high scores on the WJ-III COG proves that he exceeds the required score of 59 or less in section C.

As for Section D, it requires: (1) a score ranging between 60 and 70; and (2) a physical or other mental impairment imposing an additional and significant limitation of function. Harry did not meet the requirements of part 1, a score ranging between 60 and 70; therefore, the ALJ did not need to consider whether he met the requirements of part two. The record contains substantial evidence to prove that Harry did not satisfy the requirements of section C or D. The ALJ did not err in failing to consider whether Harry's impairments were consistent with Listing 112.05.

      **C.**      **The ALJ Properly Evaluated Whether Harry Met Listing 12.05**

Consistent with his previous argument, Harry argues that the ALJ failed to evaluate whether he met the requirements of Listing 12.05. According to Harry, the record contains evidence that could raise a substantial question as to whether he satisfied the requirements of the listing. Reviewing the record in its entirety, this Court disagrees.

Intellectual Disability is defined under Listing 12.05 as a significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e. the evidence demonstrates or supports onset of the impairment,

before age 22. 20 C.F.R. Part 404, Subpt. P, Appendix 1, Listing § 12. The four criteria for determining if a claimant is intellectually disabled are:

> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>> 1. Marked restriction of activities of daily living; or
>> 2. Marked difficulties in maintaining social functioning; or
>> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpt. P, Appendix 1, Listing § 12.05. The required level of severity for Intellectual Disability is met when one of the four requirements is satisfied. *Id*.

Section A's requirements describes disorders that are considered severe enough to prevent someone from doing any gainful activity without any additional assessment of functional limitations. Harry and Deidra testified during Harry's administrative hearing that Harry takes care of himself and has no trouble doing so. Additionally, the record does not contain any evidence, medical or educational, that supports a conclusion that Harry is dependent upon others for personal needs. Therefore, this Court finds that Harry does not meet the requirements of section A.

Section B's requirements also describes disorders that are considered severe enough to prevent someone from doing any gainful activity without any additional assessment of functional limitations. As stated in the discussion of Listing 112.05, Harry has an IQ score of 59, and has

11

scored 72 and 84 on the WJ-III-COG. His most recent scores on the WJ-III-COG ranged between 80 and 94, which clearly exceeds a score of 59 or less. Because of his scores on the WJ-III-COG, Harry does not meet Section B's requirements.

Section C assesses the degree of functional limitation the additional impairments impose to determine if they significantly limit the person's physical or mental ability to do basic work activities. The section requires the claimant to have: (1) a valid verbal, performance, or full scale IQ of 60 through 70; and (2) a physical or other mental impairment imposing additional and significant work-related limitation of function. Listing 12.05 defines mental retardation as a significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested before age 22. Adaptive functioning involves how effectively an individual copes with common life demands and meets standards of personal independence in areas such as communication, self-care, and social skills. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 40 (4th ed. 2000).

To satisfy the requirements of this Listing 12.05, Harry must have the requisite test score and satisfy the "diagnostic description of mental retardation." *Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 452 (6th Cir. 2007). After Harry turned 18 years old, he was evaluated by Dr. Reece, and she did not express any concern about impairments that may cause significant work-related limitation of function. Dr. Reece diagnosed Harry with an unspecified depressive disorder, unspecified impulse control, and disruptive and conduct disorder. However, she did not diagnose Harry with mental retardation. Dr. Reece reported that Harry was clean, neatly dressed, cooperative, and did not display psychomotor retardation or agitation. Consequently, there is substantial evidence on the record that Harry was not intellectually disabled and therefore he did not meet or equal the requirements of Listing 12.05.

## IV. CONCLUSION

For these reasons, the Court **ACCEPTS** and **AFFIRMS** Magistrate Judge Jolson's **Report and Recommendation**, herby **OVERRULLING** Harry's objection. The Commissioner's denial of benefits is **AFFIRMED**. This case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

                                               s/Algenon L. Marbley
                                               **ALGENON L. MARBLEY**
                                               **UNITED STATES DISTRICT JUDGE**

**DATED: September 28, 2017**